**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PATRICK NEWELL, *on behalf of himself and those similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>GREENBLATT, LIEBERMAN, RICHARDS & WEISHOFF LLC;<br>and JOHN DOES 1 to 10,<br><br>*Defendant*. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 24-07448 (KMW-SAK)<br><br><br>**OPINION** |

APPEARANCES:

MARK JENSEN, ESQ.
KIM LAW FIRM, LLC
411 HACKENSACK AVENUE, SUITE 701
HACKENSACK, NJ 07601

*Attorney for Plaintiff Patrick Newell*


DEBORAH ISAACSON, ESQ.
REBECCA YIN, ESQ.
RIVKIN RADLER, LLP
25 MAIN STREET, SUITE 501
HACKENSACK, NJ 07601

*Attorneys for Defendant Greenblatt, Lieberman, Richards & Weishoff LLC*

**WILLIAMS, District Judge:**

## I.  INTRODUCTION

Before the Court is Defendant Greenblatt, Lieberman, Richards & Weishoff LLC's, ("GLR&W" or "Defendant"), Motion to Dismiss, (ECF No. 8). Plaintiff Patrick Newell, ("Plaintiff"), opposes the motion, (ECF No. 14). Defendant replied, (ECF 16). The Court, having reviewed the Parties' submissions and considered the Motion to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78(b), **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## II.  BACKGROUND

The claims in this case arise out of two eviction proceedings that GLR&W filed on behalf of Lakeview Realty Investment Associates, L.P., ("Lakeview"), a non-party and the landlord which owns and operates Lakeview Apartments, who sought to collect allegedly unlawful amounts of rent, overcharges, and fees from Plaintiff. Compl. ¶¶ 2, 7-8. In or around April 2016, Plaintiff moved into Lakeview Apartments and annually renewed his lease agreement through each lease term concluding in March 2024. *Id.* ¶¶ 13-14. According to Plaintiff, the Township of Gloucester has a Rent Stabilization Ordinance, ("RSO"), that only permits an annual rent increase of 4% for Class B dwellings, however, over the course of the eight years of Plaintiff's tenancy, Lakeview raised his rent five times, from $923.00 per month to $1,651.00 per month. *Id.* ¶¶ 15-21, 30. Plaintiff asserts that four of these rent increases exceeded the limits of the RSO, ranging between 5% and 27.39%. *Id.* ¶ 31-34. In or around March 2020, Plaintiff became unemployed as the Covid-19 pandemic began. *Id.* ¶ 22. In April 2020, Plaintiff applied for Covid-19 Eviction Protection Program, ("EPP"), and Emergency Rental Assistance Program, ("ERAP"), benefits

1

through the New Jersey Department of Community Affairs, ("DCA"). *Id.* ¶¶ 24, 26. Plaintiff asserts that he worked with Lakeview's employees to submit the required documentation and renewed his benefits through the program each year through December of 2022. *Id.* ¶¶ 26-27. Between June of 2020 to May of 2023, Plaintiff asserts that Lakeview impermissibly overcharged him for rent, assessed late fees that were equal or greater than 10% of the rental payments due, and legal fees. *Id.* ¶¶ 35-42. Thereafter, Lakeview filed a collection lawsuit against Plaintiff in 2021, that proceeded to an initial eviction proceeding in April of 2022, which resulted in Plaintiff's eviction for five weeks before he was permitted to re-occupy his apartment after Lakeview conceded that the removal was conducted in error. *Id.* ¶¶ 45-59.

On May 25, 2023, Defendant, on behalf of Lakeview, initiated its first eviction proceedings against Plaintiff, (the "2023 Eviction Proceeding," Docket No. CAM-LT-003263-23). *Id.* ¶ 60. In the 2023 Eviction Proceeding, it was alleged that Plaintiff owed $5,663.63 in base rent from April 2023, $1,651 in base rent for May 2023, and $460 for various fees. *Id.* at Ex. K.[1] On January 23, 2024, Defendant filed a second eviction proceeding against Plaintiff on behalf of Lakeview, (the "2024 Eviction Proceeding," Docket No. CAM-L-001628-24). *Id.* ¶ 62. In the 2024 Eviction Proceeding, it was alleged that Plaintiff owed $20,877.63 in base rent from December 2023, $1,651 in base rent for January 2024, and $460 for various fees. *Id.* at Ex. L. Plaintiff asserts that he was overcharged for rent, that he did not owe Lakeview any outstanding rent payments, and that all payments were covered by the EPP and ERAP benefits. *Id.* ¶¶ 35-42, 44, 53.

---

[1] Upon removal of the original Complaint from State court to this Court, Defendant failed to include the 12 exhibits (Exhibit A through Exhibit L) that were attached. Recognizing the error, Defendant attached the Complaint along with the 12 exhibits as "Exhibit A" in its Motion to Dismiss. *Compare* ECF No. 1 *and* ECF No. 8. To avoid confusion, the Court will refer to the exhibits that should have been filed alongside the Complaint as if they were properly removed and attached to the Complaint.

On May 24, 2024, Plaintiff filed a lawsuit on behalf of himself and a putative class against Defendant in the Superior Court of New Jersey, Camden County, asserting claims for: 1) declaratory judgment and injunctive relief under the Uniform Declaratory Judgments Law, 2) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"), and 3) common law fraud. *See* Compl. Defendant was served on June 5, 2024. *See* Notice of Removal ¶ 2. On July 1, 2024, Defendant timely removed the case to this Court. *Id.* ¶ 3.

On August 23, 2024, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ("Rule 12(b)(6)"), for failure to state a claim upon which relief can be granted. On November 4, 2024, Plaintiff opposed the motion, and on November 18, 2024, Defendant replied. Thus, the Motion to Dismiss is ripe for adjudication.

### III.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the movant, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

3

*Twombly* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.) A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557.)

A district court may consider allegations in the complaint; matters of public record, orders, and exhibits attached to the complaint are taken into consideration. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). Thus, generally, a district court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Littig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, one exception is that courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* at 249.

## IV. DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed for failure to sufficiently plead factual allegations for any of his three claims: declaratory judgment and injunctive relief under the Uniform Declaratory Judgments Law; violations of the FDCPA; and common law fraud. The Court will address each claim in turn below.

### A. Declaratory Judgment and Injunctive Relief

4

Plaintiff seeks declaratory judgment and injunctive relief under the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-53, ("UDJL"). *See* Compl. ¶¶ 77-82. The UDJL states in pertinent part that "[a] person…whose rights, status or other legal relations are affected by a statute…may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." Here, there are several notable issues with Plaintiff attempting to bring this "claim."

First, injunctive relief is just that, a form of relief, not a cause of action, and therefore it cannot be pursued as a standalone "claim" as Plaintiff presents it in his Complaint. *See Martinez v. Jefferson Cap. Sys., LLC*, No. 23-22367, 2024 WL 3548943 at *2 n.3 (D.N.J. Jul. 26, 2024). On this basis alone, Plaintiff's "claim" pursuant to the UDJL must be dismissed.

Furthermore, Plaintiff asserts that he is seeking injunctive and declaratory relief under the UDJL "based on Defendant's violations of the FDCPA." *Id.* ¶ 80. This "claim" was rejected in *Nuamah-Williams v. Frontline Asset Strategies, LLC*, where the plaintiff sought declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, (the federal Declaratory Judgments Act, "DJA"), and the UDJL. *Nuamah-Williams v. Frontline Asset Strategies, LLC*, No. 21-15440, 2022 WL 901525 at *5 (D.N.J. Mar. 28, 2022). In *Nuamah-Williams*, the court clearly explained that the Third Circuit held that "injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA." *Id.* (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *as amended* (Oct. 22, 2004)).

Given that Plaintiff in this case sought the application of the UDJL and not the federal DJA, it is possible that he thought that seeking relief solely through the state law would avoid the Third Circuit's holding in *Weiss*. This is not so. Pursuant to the *Erie* doctrine, federal courts apply

5

federal procedural law in federal actions when an action is removed to federal court. *Martinez*, 2024 WL 3548943 at *2 n.3. Declaratory judgment is considered to be procedural in nature, and therefore, the DJA and not the state declaratory judgment law applies here. *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Here, *Weiss* controls, and because Plaintiff is expressly seeking declaratory and injunctive relief for claims that fall within the FDCPA, injunctive and declaratory relief are not available. Thus, Plaintiff "can only seek the relief provided" by the FDCPA. *Huertas v. U.S. Dept. of Educ.*, No. 08-3959, 2009 WL 3165442 at *8 (D.N.J. Sept. 28, 2009). Plaintiff's claim pursuant to the UDJL must be dismissed.

### B. FDCPA

Next, the Court turns to Plaintiff's FDCPA claim. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to prevent debt collectors who do not use abusive practices from being competitively disadvantaged, and to promote consistent State action to protect consumers. *See* 15 U.S.C. § 1692(e). To prevail on an FDCPA claim, a plaintiff must prove that 1) he is a consumer, 2) the defendant is a debt collector, 3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and 4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Green v. LVNV Funding, LLC*, No. 24-396, 2024 WL 1173097 at *3 (D.N.J. Mar. 19, 2024); *see also Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 150 (3d Cir. 2023).

Here, the parties do not dispute the first three elements.[2] Therefore, the Court will focus its analysis on the fourth element: that Defendant has violated a provision of the FDCPA in

---

[2] The Cout notes that a law firm can meet the statutory definition as a debt collector if it regularly engages in debt collection, as Defendant does so here. *See Brooks v. Jefferson Capital Sys., LLC*, No. 20-15563, 2021 WL 3472439 at *3 (citing *Piper v. Portnoff Law Assoc.*, 396 F.3d 227, 232 (3d Cir. 2005)).

6

attempting to collect a debt. Plaintiff asserts Defendant violated provisions of sections 1692e and 1692f in Count Two of his Complaint. *See* Compl. ¶ 89.

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means with the collection of any debt." 15 U.S.C. § 1692e. Specifically, Plaintiff alleges that Defendant's conduct violated §§ 1692e(2)(A), 1692e(5), and 1692e(10). *See* Compl. ¶ 89. § 1692e(2)(A) states in pertinent part that "the false representation of the character, amount or legal status of any debt," is a violation of the FDCPA. § 1692e(5) states in pertinent part that the "threat to take any action that cannot legally be taken or that is not intended to be taken," is a violation of the FDCPA.[3] § 1692e(10) states in pertinent part that the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a violation of the FDCPA.

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff specifically cites to § 1692f(1), which states that the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such an amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of the FDCPA.

First, the Court will address Plaintiff's arguments related to the application of late fees, legal fees, and rent increases during his tenancy. Plaintiff alleges Defendant was collecting unlawful amounts of rent due to the apartment being rent controlled and therefore subject to a maximum annual rent increase, which he asserts was exceeded multiple times. *See* Compl. ¶¶ 15-21, 30, 31-34. While Plaintiff does not explicitly cite to a specific subsection of the FDCPA, the

---

[3] The Court notes that Plaintiff does not allege any specific threats of action by Defendant, or that any action asserted by Defendant was not actually taken, nor can the Court find anything in the Complaint that can be construed as such. Therefore, the Court dismisses Plaintiff's claim pursuant to § 1692e(5).

7

Court construes Plaintiff's assertion to be that Defendant was collecting this allegedly unlawful rent in violation of § 1692e(2)(A) because Defendant allegedly treated the purportedly unlawful increases in the rent as lawful, which could be construed as a false representation of the character or legal status of the debt. Similarly, § 1692e(10) could be applicable in that Defendant's attempts to collect the allegedly unlawful increases in rent amounts would be a "false representation" of the debt and ultimately deceptive in its attempts to collect the unpaid amounts.

Here, however, the rent increases were lawful. The record demonstrates that the apartment was decontrolled in 2013, years before Plaintiff moved into the apartment, and therefore the property was not subject to the RSO that limited rent increases. *See* Mot. to Dismiss at Cert. of Brian S. Schoepfer, 2024 Eviction Proceeding Complaint, at Ex. C.[4] Accordingly, Defendant did not falsely represent the character or legal status of the debt, and attempting to collecting those amounts would not have been deceptive.

Plaintiff further asserts that Defendant unlawfully attempted to collect rent and late fees from months that Lakeview was receiving disbursements from ERAP and EPP for his tenancy. *See* Compl. ¶¶ 35-42. Additionally, Plaintiff alleges that collecting rent and late fees while receiving ERAP and EPP benefits violated N.J.S.A. 52:27D-287.9, which states in pertinent part that "[a]s a condition of receiving any State or federal rental assistance on behalf of a tenant for rent due and owing, a landlord shall waive all late fees assessed for rent unpaid during the period for which assistance is being provided." N.J.S.A. 52:27D-287.9; *see also id.* ¶ 90.

However, according to the approval letters Plaintiff himself submitted, the DCA did not approve payments for April 2020, nor did it approve payments for May 2021 through November 2021. *See* Compl. at Exs. E and F, (showing that Plaintiff was approved for ERAP assistance for

---

[4] The Court notes that it can take judicial notice of public records, such as the public dockets of state court, without converting the motion into one for summary judgment. *Schmidt*, 770 F.3d at 249

8

May 2020-April 2021 and December 2021, and EPP assistance of "$1348 per month covering the months of 01/01/2022 through 07/01/2022[.]"). Therefore, Plaintiff did not have ERAP or EPP coverage for approximately 8 months of rent that accrued prior to the April 2023 lease. It also appears that Plaintiff did not make any payments to Lakeview from April of 2023 through the end of the lease term in 2024, which would not have been eligible for ERAP or EPP relief. *See* Mot. to Dismiss at Ex. D.

The record also shows that Plaintiff received credit back to his account several times over the course of time Plaintiff was receiving DCA assistance. In December of 2021, credits in the amount of $3,903.00 with reference to late charges, rent, and "misc. credit," along with the note "Approved Covid CR," were deposited in Plaintiff's account, a further $618.00 in credits with reference to "late charge" was applied to Plaintiff's account in June 2022 with the note "NJERAP Covered," and $882.00 in credits with reference to "late charge" were applied to Plaintiff's account on January 30, 2023 with the note "NJDCA PMT, JAN L/F" and "NJDCA PMTs July-DEC'22." *See* Mot. to Dismiss at Ex. D. These credits occurred during the time period where Plaintiff had approved assistance from ERAP and EPP, and approximately cover a year and a half of late charges, which corresponds to the time Plaintiff was approved for assistance. Therefore, N.J.S.A. 52:27D-287.9 would not be applicable to the amounts Plaintiff contests in his 2023 and 2024 Eviction Proceedings.

Given the record as discussed above, Defendant did not falsely represent the character or legal status of the unpaid rent, nor was it being deceptive when attempting to collect those amounts. Quite simply, Plaintiff owed rent, and Defendant pursued collections against Plaintiff on behalf of its client, Lakeview.

9

Plaintiff also alleges Defendant unlawfully attempted to collect attorney fees from the various eviction proceedings initiated by Lakeview. *See* Compl. ¶¶ 61-63. The Court construes Plaintiff's assertion to be that Defendant violated § 1692f(1), which states that the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such an amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of the FDCPA.

Here, again, Plaintiff's claim falls short based on the documents he provided. It is clear Plaintiff's lease permitted the collection of late charges and attorney's fees as rent. The lease in relevant parts says, "[i]n addition, should Rent not be paid by the 6th of the month, a court action may be instituted and Resident will be responsible for all legal costs incurred. Any such Attorney's fees and court costs shall be due and payable as additional Rent." Compl. at Ex. A(3), Special Provision. Moreover, the lease advises in two other locations that late fees, attorney's fees, and "all legal costs" would be Plaintiff's responsibility to pay as additional rent. *See id.* at Ex. A(1) ¶¶ 10, 30. It is permissible to charge a tenant attorney's fees and legal costs, as well as other charges, as additional "rent" in New Jersey. *See Hous. Auth. & Urban Redevelopment Agency v. Taylor*, 171 N.J. 580, 586 (N.J. 2002) ("New Jersey courts long have held that parties to a residential lease may treat attorneys' fees and other costs related to an eviction as 'additional rent.'"). Thus, Defendant did not violate § 1692f(1) when collecting attorney's fees pursuant to the leasing agreement Plaintiff had with Lakeview.

Next, the Court turns to Plaintiff's assertion that Defendant misrepresented the amounts Plaintiff owed in the Eviction Proceedings of 2023 and 2024. *See* Compl. ¶¶ 60, 62. The Court construes Plaintiff's assertion to be that Defendant violated § 1692e(2)(A), which states in pertinent part that "the false representation of the character, amount or legal status of any debt," is

10

a violation of the FDCPA. The Court notes that the filing of the eviction complaints asserted various charges and debts owed, which can be construed as a "communication" pursuant to the FDCPA. *See* Compl. at Exs. K and L; *see also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 177 (3d Cir. 2015).

To determine whether a debt collector's communication violates the FDCPA, the court uses the "least sophisticated debtor" standard. *Garmon v. Cmty. Loan Servicing, LLC*, No. 22-5974, 2024 WL 489566 at *9 (D.N.J. Feb. 8, 2024); *see also Huber*, 84 F.4th at 150. The test is used to consider "whether a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." *Dabbah v. Jefferson Capital Sys. LLC*, No. 22-6894, 2023 WL 4267662 at *2 (Jun. 28, 2023), (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015)) (emphasis in original). "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Garmon*, 2024 WL 489566 at *9 (quoting *Jensen*, 791 F.3d at 418). The least sophisticated debtor standard is an objective standard, which permits the Court to decide how a communication would be perceived as a matter of law, "which can be decided on a motion to dismiss." *Tekkoc v. Paula G. Kaplan Atty. At Law*, No. 17-6335, 2018 WL 11275903 at *5 (D.N.J. Apr. 5, 2018) (internal citation omitted).

Plaintiff alleges that in the 2023 Eviction Proceeding, Defendant claimed Plaintiff owed $5,663.63 in "base rent" for April 2023. *See* Compl. at Ex. K. This was not the accurate amount for the rent due that month, which was $1,651.00. *See* Compl. Exs B and K. Rather, $5,663.63 reflected the total amount Plaintiff had due and owing to Lakeview by April of 2023. *Id.* This error happened again in the 2024 Eviction Proceeding, when Defendant alleged Plaintiff owed $20,877.63 in "base rent" in December 2023, which was not the accurate amount of "base rent."

11

*See* Compl. ¶ 62, Ex. L. The accurate amount of base rent for December 2023 was $1,651.00, the amount for which his lease renewed in April 2023. *See* Compl. ¶ 21; *id.* at Ex. B; Mot. to Dismiss at Ex. D.[5]

Defendant argues that the least sophisticated debtor would not be confused by the amounts it listed on the eviction complaints for "base rent" in April 2023 and December 2023 because they accurately correspond to the overall balance Plaintiff owed in those months. *See* Compl. at Ex. B; Mot. to Dismiss at Ex. D. However, "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Saldana v. Resurgent Capital Services, LP*, No. 20-01879, 2021 WL 3758080 at *8 (D.N.J. Aug. 25, 2021) (quoting *Brown v. Card Service Center*, 464 F.3d 450, 455 (3d Cir. 2006)). Here, the Court can reasonably read the eviction complaint's misstatement of "base rent" as the debt owed for April's rent, which is inaccurate to what Plaintiff owed for April's rent, which was $1,651.00 and not as $5,663.63. *See* Compl. at Exs. B and K. While it is true that Plaintiff owed in total as of April 2023 was $5,663.63 pursuant to the ledger, the eviction complaint's description of the amount owed can reasonably be read to have two different meanings, and one is inaccurate. At this stage, the Court finds that Plaintiff sufficiently plead a false representation pursuant to § 1692e(2)(A). *See Saldana*, 2021 WL at *8 (holding that alleging a misstated amount of debt in a collection letter is enough to defeat a motion to dismiss); *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 474 (2019) ("Nor can debt collectors make false, deceptive, or misleading representations in connection with a debt, like misstating a debt's character, amount, or legal status.").

Thus, Plaintiff's § 1692e(2)(A) claim may move forward. All Plaintiff's other FDCPA claims must be dismissed for failure to state a claim.

---

[5] Exhibit D is Plaintiff's tenant account ledger which was attached to the 2024 Eviction Proceeding Complaint that is inclusive through December 2024.

12

### C. Fraud

To state a claim for fraud under New Jersey law, "a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), *superseded by statute on other grounds by the* Jurisdiction and Venue Clarification Act of 2011. The stringent pleading standard set out in Federal Rule of Civil Procedure 9(b) applies to all claims for fraud. *Id.* "In all averments of fraud…the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (citing Fed. R. Civ. P. 9(b)). "[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* The heightened pleading standard ensures "notice of the precise misconduct with which defendants are charged and to prevent false or unsubstantiated charges." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 497 (D.N.J. 2014) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendant committed fraud by attempting to collect arrearages that included "unlawful rent increases, fees, and/or fraudulent overcharges." Compl. ¶¶ 92-97. Meanwhile, Defendant argues that Plaintiff has failed to meet the heightened pleading standard of fraud and has merely made conclusory allegations of fraud. *See* Mot. to Dismiss at 16. Defendant further asserts Plaintiff has not plead either of the first two elements of a fraud claim, namely a material misrepresentation of fact and that defendant has knowledge or belief of its falsity. *Id.* at 17.

While Plaintiff has plead some of the elements of a fraud claim with particularity, the Court agrees with Defendants that Plaintiff has not plead all elements sufficiently. Here, the Court cannot

ascertain what, if any, reliance Plaintiff had in relation to the alleged misrepresentation. Reliance is "central to a common law fraud claim," and actual receipt and consideration of a misrepresentation is critical to state a claim pursuant to New Jersey law. *Lavine v. Am. Acad. Of Pediatrics Inc.*, No. 21-17099, 2023 WL 3431212 at *6 (D.N.J. May 12, 2023). While the Complaint painstakingly outlines the various lawsuits filed on behalf of Lakeview against Plaintiff and his responses to two suits filed prior to Defendant's involvement in the case, there is no information as to how he specifically considered and relied on the 2023 or 2024 eviction complaints. *See* Compl. ¶¶ 43-63; Opp. Br. 11-12. It is therefore unknown what level of reliance he placed on the alleged misrepresentation, if any, given that he has contested the amounts he owes Lakeview at every turn. Merely stating that he relied upon Defendant's filing does not rise above a formulaic recitation of the elements. *See* Compl. ¶ 97. Therefore, Plaintiff's claim of fraud cannot survive.

### V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss, (ECF No. 8), is **GRANTED IN PART** and **DENIED IN PART**, such that only Plaintiff's FDCPA claim for § 1692e(2)(A), the false representation of the character, amount, or legal status of any debt, survives. The remaining claims are **DISMISSED WITHOUT PREJUDICE**. An order consistent with this Opinion will be entered.

August 14, 2025

KAREN M. WILLIAMS, U.S.D.J.

Case 1:24-cv-07448-KMW-SAK   Document 17   Filed 08/14/25   Page 16 of 16 PageID: 515